ST. PAUL FIRE & MARINE INS. CO. v. McMILLAN. (No. 1785.)

(Court of Civil Appeals of Texas. Texarkana. April 26, 1917. Rehearing Denied May 17, 1917.)

INSURANCE ☞74—AUTHORITY OF AGENT.

A letter from general agents of a fire insurance company stating, in response to inquiry from an insurance broker, the terms on which they would write certain insurance, held not to give such broker power to write the insurance

stated and extend credit for the payment of the premium.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 99, 100.]

Appeal from District Court, Hunt County; Wm. Pierson, Judge.

Action by Claud McMillan against the St. Paul Fire & Marine Insurance Company. From judgment for plaintiff, defendant appeals. Reversed and rendered.

In his petition appellee, who was the plaintiff below, alleged that he was the owner of a dwelling house and its contents, consisting of furniture, etc., situated on his farm about three miles from Greenville; that on November 30, 1912, "he made application to" appellant "through its agent, J. M. Massay, at Greenville, for insurance on his property against loss by fire, as follows: On the said residence, $750; on the contents thereof, $500; and on a certain barn and contents situated on said premises, the sum of $1,250 for a period of 3 years"; that the application was forwarded by Massay to Cravens & Cage, appellant's general agents at Houston, who instructed Massay to notify appellee that appellant would not insure the barn and its contents, but would insure the dwelling house and its contents "for a period of 12 months at a certain rate of premium," if appellee desired such insurance; that "thereupon and thereafter" he told Massay that he desired the insurance, and that Massay on behalf of appellant, and having authority to act for it, agreed to insure the property and did insure it against loss by fire; that thereafterwards the dwelling house and its contents "were totally destroyed by fire within the terms of said contract of insurance." And he then further alleged as follows:

"That, by reason of the premises, the defendant became obligated and bound to pay this plaintiff his aforesaid loss to the extent of $1,250. Plaintiff says that by reason of the premises a valid contract of insurance was entered into between plaintiff and defendant by reason of plaintiff's assent to the counter proposition of the said Cravens & Cage; that if in fact a policy was not written, then it was the duty of the said Massay or the said Cravens & Cage to have written said policy, and their failure to do so was because of their own neglect and no fault of this plaintiff, and in equity they should be and are held to owe this plaintiff the same liability as if said policy had been written, or that if they did not write said policy, then plaintiff has been damaged by their negligence in not so doing to the amount of the loss sustained by him because of such negligence which is the said sum of $1,250."

The answer of appellant consisted of a general and special exceptions to the petition and a denial of the allegations therein.

On special issues submitted to them the jury found: (1) That Massay had "authority to bind" appellant with reference to insuring the property; (2) that Massay at appellee's request agreed "to issue or cause to be issued a policy of fire insurance" on the dwelling house and its contents "with the defendant company"; (3) that appellant during the nego-

tiations between appellee and Massay held the latter out "as having authority from it to make contracts of insurance for it or in its name"; (4) that Massay informed appellee at the time the latter signed the application for the insurance that he (Massay) "had no authority to issue a policy of insurance on plaintiff's property, but that such policy could be issued only at the Houston office of the company"; (5) that Massay had authority from appellant "to bind it to issue a policy of fire insurance without payment of premium in advance, and that Massay agreed "to issue or cause to be issued a policy without the prepayment of the premium; (6) that the reasonable cash value of the dwelling house was $750, and that of the household goods destroyed $400; (7) that a few days before the fire occurred appellee told Massay "in substance to insure his house and contents in accordance with the proposition in Cravens & Cage's letter to Massay"; that "Massay agreed thereto"; and that "there was sufficient time, by the exercise of reasonable and proper diligence, for Massay to have notified Cravens & Cage of such acceptance, or instructions by plaintiff, and for them to have issued the policy and sent it to Greenville before the fire occurred."

On the findings made by the jury the court rendered judgment in favor of appellee against appellant for $1,150, and interest thereon from the date the fire occurred.

E. G. Senter, of Waco, for appellant. H. L. Carpenter and W. A. Shields, both of Greenville, for appellee.

WILLSON, C. J. (after stating the facts as above). It is not necessary to determine whether the testimony was sufficient to show a complete contract on the part of Massay to insure appellee's dwelling house and its contents against fire or not; for the testimony was wholly insufficient to show that Massay, if he did so contract, acted for or was authorized to act for appellant. Therefore we think the trial court erred when he refused appellant's request to peremptorily instruct the jury to find in its favor.

It appeared without dispute that Cravens & Cage, doing business in Houston, were general agents for appellant in Texas. It further so appeared that while Massay and his partner, Murphy, were insurance agents in Greenville, at the time Massay took appellee's application for the insurance and sent it to Cravens & Cage, neither he nor his firm was then the agent, or had ever been, of appellant, or had or ever had any authority whatever to act for it in any way. It is plain, therefore, that when Massay took the application and sent it to Cravens & Cage, he had no authority to act for and did not act for appellant, but, instead, acted for appellee. In other words, in doing that he was appellee's, not appellant's, agent. For anything to the

contrary appearing in the record, there had never been any communication of any character between Massay or his firm and appellant or its general agents Cravens & Cage before the latter received from Massay & Murphy a letter transmitting appellee's application, as follows:

"Greenville, Texas, 11/30/12.

"Cravens & Cage, Houston, Texas—Gentlemen:

"Re Claud McMillan Application.

"Not knowing whether you would write a dairy barn, this is submitted, and if you care to write it please advise before doing so, this is good business of its class.

"Yours truly,          Massay & Murphy."

Up to this point in the transaction there is no pretense in the evidence that Massay acted for any except appellee. The contention, on the part of appellee is that the letter Cravens & Cage sent in reply to the one set out above conferred upon Massay authority to act for appellant in concluding with him a contract for the insurance. That letter was as follows:

"December 4, 1912.

"Messrs. Massay & Murphy, Greenville, Texas—Gentlemen:

"Application of Claud McMillan.

"Replying to your favor of the 30th ultimo, we beg to advise that we shall be glad to write a three year policy on Mr. McMillan's dwelling and furniture, but we cannot write a policy for that length of time on his dairy barn. By a reference to the basis schedule, you will find that dairy barns are rated under the mercantile schedule, and therefore a term policy cannot be written upon a frame risk. We shall be glad to insure the dairy barn for one year at a time, at a rate to be promulgated by Mr. Roulet (which will be approximately $3.64). Awaiting you advices, we remain,

"Yours very truly,          Cravens & Cage."

It will be noted that Massay & Murphy in their letter to Cravens & Cage did not ask them to issue a policy to appellee. On the contrary, Cravens & Cage were told, in effect, not to issue such policy before they heard further from Massay & Murphy. The plain and only purpose of the letter was to ascertain if appellant would issue such a policy in compliance with the application accompanying the letter, if appellee, after being advised that it would and of the terms on which it would issue same, should wish it to do so. Cravens & Cage in the letter they sent in reply merely furnished Massey & Murphy the information they asked for. The latter were told that appellant would not issue a policy insuring the dwelling house and furniture and the barn for a term of three years in compliance with appellee's application, but, if advised that same was desired, would issue one insuring the dwelling and furniture for a term of three years, and the barn for one year. The Cravens & Cage letter having been written merely for the purpose of furnishing Massay & Murphy information they wished for appellee's benefit, and going no further, we think it should not be construed as conferring upon Massay & Murphy any authority whatever to act for appellant. Certainly, if it conferred any such authority on them, it was only to communicate to appellee the fact that appellant would not issue to appellee a policy in conformity with his application, but, if he desired it and requested it to do so, would issue to him on payment of the premium it charged therefor a policy insuring his dwelling house and furniture for a term of three years and his barn for one year. Plainly, if the letter should be construed as conferring only the authority on Massay & Murphy, they could not bind appellant by a contract to insure the property. And if the letter should be construed as also authorizing Massay & Murphy to act for appellant in communicating to it the fact that appellee did not desire insurance on the barn at the rate indicated in the letter, but did wish insurance on the dwelling house and barn, it would still appear that they were lacking in authority they must have had before they could bind appellant as appellee claimed they had. For authority of an agent merely to receive and communicate to his principal would not empower the agent to accept the offer and thereby bind the principal. Nor would the conclusion be different if the letter should be construed as a proposal on the part of appellant, through Massay & Murphy, to appellee to issue a policy on either his dwelling house, furniture, and barn, or on the dwelling house and furniture alone. For the proposal should be construed as conditioned on the payment then, and not at some time in the future, of the premium charged on the policy. The evidence showed conclusively that appellee never paid nor tendered the premium to Massay & Murphy. The contention was that Massay at the time he agreed to insure the property impliedly waived the payment of the premium and impliedly agreed that appellee might pay same at some time in the future. Authority possessed by a special agent to bind his principal for a consideration then paid to insure property would not empower the agent to bind his principal to insure for a consideration to be paid at some time in the future.

The judgment will be reversed, and judgment will be here rendered that appellee take nothing by his suit against appellant.

⊙=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes